IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JANICE E. HINES,

      Plaintiff,

vs.                                                                            CASE NO. 1:14-cv-124-MP-GRJ

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits (DIB).  Doc. 1.  The Commissioner has answered and both parties have filed briefs outlining their respective positions.  Docs. 11, 12.  For the reasons discussed below, the undersigned recommends that the Commissioner's decision should be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB in October 2008 alleging disability since June 2008.  (R. 130-31.)   Her application was denied initially and upon reconsideration.  (R. 72-73.)  A hearing was held before an Administrative Law Judge, at which Plaintiff and a vocational expert (VE) testified.  (R. 35-71.)  The ALJ denied Plaintiff's claims in a decision dated April 7, 2011, finding that although Plaintiff suffered from the severe impairments of degenerative disc disease, degenerative joint disease, and carpal tunnel syndrome, she was not disabled.  (R. 19-28.)  The Appeals Council denied Plaintiff's

request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-3.)  On July 9, 2014, Plaintiff filed the instant appeal to this Court.  Doc. 1.  On appeal, Plaintiff raises one issue: Whether the ALJ erred by failing to specifically mention or discuss Plaintiff's obesity, in contravention of Social Security Ruling 02-01P and in contravention of the requirement to consider the combined effects of Plaintiff's impairments.  Doc. 11.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole,

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[4]

However, the district court will reverse the Commissioner's decision on plenary review if

the decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by

reason of any medically determinable physical or mental impairment that can be

expected to result in death, or has lasted or can be expected to last for a continuous

period of not less than twelve months.[6]  The impairment must be severe, making

Plaintiff unable to do his previous work, or any other substantial gainful activity which

exists in the national economy.[7]

The burden of proof regarding the plaintiff's inability to perform past relevant

work initially lies with the plaintiff.[8]  The burden then temporarily shifts to the

Commissioner to demonstrate that "other work" which the claimant can perform

currently exists in the national economy.[9]  The Commissioner may satisfy this burden

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[9] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The

by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[10]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[11]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[12]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[13]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[14]  Only after the Commissioner meets this burden

---

Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[10] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[11] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[12] Walker, 826 F.2d at 1003.

[13] Wolfe, 86 F.3d at 1077-78.

[14] *See id.*

does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A. Medical Record Evidence

Because Plaintiff's appeal focuses on the effect of her obesity on her physical impairments, the Court's summary of the medical records will focus on those issues.

Plaintiff's application for benefits alleged that she was disabled due to back pain, arthritis, thyroid disease, joint problems, and high blood pressure.  (R. 156.)  Plaintiff treated with Dr. Innocent Odocha, her primary care physician, for complaints of knee, arm, and back pain, abdominal pain, shortness of breath, depression, and other concerns.  Plaintiff's records reflect a history of gastric bypass surgery and diagnosis of obesity.  Dr. Odocha's notes reflect that Plaintiff was treated primarily with medication for complaints of back and joint pain and referral for physical therapy.  Relative to her obesity, Plaintiff was advised to increase exercise, reduce calories, and continue on Adipex for weight loss.  (R. 371-97.)

Physical examinations at  Comprehensive Pain Management of North Florida showed tenderness over the lumbar spine, a positive straight leg raise test on the right, and decreased range of motion in the back.  She received lumbar epidural steroid injections and pain medication.   (R. 470-82.)

Plaintiff was evaluated by neurosurgeon Eric Scott, M.D., in August 2010.  Dr. Scott noted that Plaintiff had diminished range of motion in her neck, positive Tinel's sign in her right elbow and wrist, and decreased pinprick sensation in her right hand

related to possible carpal tunnel syndrome.   She had good flexion of her back; no back spasm; 5/5 muscle strength throughout; and normal heel, toe, and tandem walking. MRI of Plaintiff's neck showed degenerative spondylosis with disc protrusions but no cord compression.  A September 2010 EMG/Nerve Conduction Study showed moderate right carpal tunnel syndrome but no evidence of acute or chronic radiculopathy from the neck.  (R. 423-25, 428-29, 483.)

Plaintiff underwent breast reduction surgery in September 2010, and on followup she noted improvement in her neck and back pain.  (R. 445-57.)

Consultative examiner Eftim Adhami, M.D., noted Plaintiff's obesity, but further noted that Plaintiff had no lumbar muscle spasms, negative straight leg raising, normal sensation, 5/5 muscle strength in all muscles, no muscle atrophy, normal walking, full range of motion in her knees, and no abnormal movements.  (R. 326-27.)  Plaintiff refused to allow Dr. Adhami to test her range of motion of the back, but she had no tenderness to palpation, and Dr. Adhami opined that her range of motion did not seem to be restricted based on indirect observations.  *Id*.  Plaintiff had mild degenerative disease in her knees, treated with injections and surgeries; her walk was preserved without any assistive devices.  She had mild sensory right carpal tunnel syndrome with no motor involvement.  *Id*.

State agency consultant Dr. Harry Beecham reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment.  Dr. Beecham specifically noted that Dr. Adhami's records reflected that Plaintiff was obese, having a BMI of 36.  Based on his review, Dr. Beecham concluded that Plaintiff: Could

occasionally lift up to 20 pounds and frequently lift 10 pounds; could stand/walk and sit

for a total of six hours in an eight-hour workday; could push and/or pull without

limitation; had no postural limitations other than occasionally climbing; had no

manipulative, visual, or communicative limitations; and had no environmental limitations

except that she must avoid concentrated exposure to fumes, odors, dusts, gases, and

poor ventilation.  There was no medical source statement regarding Plaintiff's physical

abilities.  (R. 399-405.)

**B.  Hearing Testimony**

At the commencement of the hearing, Plaintiff's representative asked the ALJ to

"pay traditional notice of the obesity ruling," SSR 02-1P.   Plaintiff was 44 years old at

the time of the hearing, and had worked as a middle school teacher's assistant and

school clinic health technician.  She has a high-school diploma and a driver's license.

She testified that she was 5'4" tall and weighed 230 pounds.   She stopped working at

the end of the 2008 school year because her job ended.  She had injured her lower

back and knees at work and felt she could no longer perform her duties because they

aggravated her injuries and she had pain and side effects from medication.  Plaintiff

testified that her activities of daily living include cooking and occasional cleaning,

though she can only cook for 20 or 30 minutes at a time.  She does dishes, but her

husband does most of the laundry.  She does not do yard work and does not have

recreational activities.  She testified that she frequently feels drowsy and fatigued from

thyroid disease, anemia, and medication side effects.   (R. 36-58.)

**C.  ALJ's Decision**

The ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, degenerative joint disease, and carpal tunnel syndrome, but that Plaintiff's medically determinable mental impairment of depression does not cause more than minimal limitation in her ability to perform basic mental work activities and is therefore non-severe.  He further found that Plaintiff did not have an impairment or combination of impairments that met or equaled the Listings.  The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b), except that she was limited to only occasional climbing, kneeling, crawling, balancing, stooping, and crouching, could have occasional exposure to heights, hazards, and pulmonary irritants, and could perform frequent gross and fine manipulation bilaterally.  She was limited to simple, routine tasks, and required a sit/stand option which provides the opportunity to alternate sitting and standing at least one time every 15 minutes.  (R. 22-23.)

In making this determination, the ALJ partially credited Plaintiff's complaints regarding the effects of his medically determinable impairments, but found that Plaintiff's complaints were not fully credible.   The ALJ noted that Dr. Adhami's consultative examination, the notes of Plaintiff's primary care physician Dr. Odocha, and the notes of neurosurgeon Dr. Scott did not support the degree of limitation alleged by Plaintiff.  The ALJ observed that there were no opinions from any treating doctors regarding Plaintiff's functional limitations after her alleged onset date.  The ALJ considered the opinion of the State agency medical consultant, Dr. Beecham, and gave his opinion that Plaintiff could perform a reduced range of light work some weight

because the opinion was largely consistent with the objective findings in the record.  (R. 25-26.)

The ALJ found that Plaintiff was unable to perform her past relevant work, but based on her age, education, work experience, and RFC, and based on the testimony of the VE at the hearing, there were jobs that Plaintiff can perform such as mail clerk and office helper.  He accordingly concluded that Plaintiff was not disabled.  (R. 26-27.)

## IV.  DISCUSSION

### *Whether the ALJ Properly Considered Plaintiff's Obesity In Evaluating Plaintiff's RFC and Determining Whether Plaintiff Met a Listing*

Plaintiff contends that the ALJ failed to properly follow Social Security Ruling 02-1p in finding that Plaintiff is not disabled.  Social Security Ruling 02-1p guides the evaluation of obesity in disability claims, and was published following the deletion of Listing 9.09, Obesity, from the Listing of Impairments.  *See* 67 Fed. Reg. 57859, 57860-61 (Sept. 12, 2002).  The SSR recognizes that obesity is a risk factor that increases the chance of developing impairments in other body systems, including the cardiovascular, respiratory, and musculoskeletal body systems.  *Id*.  The SSR provides that the ALJ should consider the effect of obesity at each step of the sequential evaluation:

> [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately....
> [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

*Id*. at 57861-62.

Plaintiff says that the ALJ failed to mention, much less discuss, her obesity.

Doc. 11.  Plaintiff argues that the ALJ failed to evaluate the increased back pain that would be concomitant with her obesity in determining whether her impairments equal a listing, and in determining her physical RFC at Step Four.  *Id*. at 10.  The Commissioner concedes that the ALJ did not mention obesity in the decision, but points out that Plaintiff did not allege obesity as the cause of her alleged disability in her disability paperwork, nor did she testify that her obesity causes any additional functional limitations at the hearing.  Doc. 12 at 7.  The Commissioner further notes that there is no medical evidence attributing any additional functional limitations due to Plaintiff's obesity other than those already considered by the ALJ in formulating his RFC.  Doc. 12 at 8.

Although the ALJ's decision does not mention obesity, the ALJ discussed Plaintiff's medical records in detail, including discussing Plaintiff's back pain, her degenerative disc and joint disease, and her functional limitations therefrom.  Although Plaintiff's medical records, referred to by the ALJ, consistently reference Plaintiff's weight and obesity, there are no medical records attributing any functional limitations due to Plaintiff's obesity.  Notably, Plaintiff has not pointed to any record evidence suggesting particular additional limitations from obesity that the ALJ failed to consider.  *See Vickers v Astrue*, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009) (remand for failure to mention obesity was not required where the claimant did not show how his obesity impacted his ability to work); *Sutton v. Colvin*, 2014 WL 4627428 * (N.D. Fla. Sept. 15, 2014) (remand for failure to evaluate effect of morbid obesity on back pain at Step Four not required where ALJ discussed medical records referencing obesity and

no medical source attributed functional limitations due to obesity) (citing *Vickers*).

In the absence of any evidence in the record that Plaintiff's obesity causes additional functional limitations beyond those assessed in the RFC, there is no basis for a remand due to the ALJ's failure to specifically address obesity in the disability determination.  *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3rd Cir. 2005).  In *Rutherford*, the Third Circuit held that a remand was not required even though the ALJ did not explicitly consider the claimant's obesity where a remand would not affect the outcome of the case.  In that case, as in the present case, the Plaintiff offered only generalized assertions that weight impeded her functional abilities, and the administrative record indicated clearly that the ALJ relied on the medical evidence in making his RFC findings.  The Court observed that Plaintiff's doctors "must also be viewed as aware of [Plaintiff's] obvious obesity," and that "the ALJ's adoption of their conclusion constitutes a satisfactory if indirect consideration of that condition." *Rutherford*, 399 F.3d at 553.

In this case, even though no doctor placed any restrictions on Plaintiff as a consequence of her acknowledged obesity, Dr. Beecham, the State agency non-examining physician, considered Plaintiff's height, weight, and BMI in finding that Plaintiff could perform a limited range of light work.  The ALJ expressly referred to and relied upon this opinion in his written decision, as well as the other medical records referencing Plaintiff's obesity.  *See* R. 26.  On this record, such consideration constitutes a "satisfactory if indirect consideration" of Plaintiff's obesity.  *Rutherford*, 399 F.3d at 553.  Accordingly, the Court concludes that Plaintiff's argument that the ALJ

erred by failing to explicitly address Plaintiff's obesity does not merit a remand.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS,** in Gainesville, Florida, on the 17th day of August 2015.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.

.